HEMPHILL v. HEMPHILL.

(Filed May 25, 1905.)

*Hearsay—Declarations and General Reputation as to Boundaries—When Competent.*

1. The declarations of a person as to the location of a boundary are competent if the declarations were made *ante litem motam* and the declarant is dead when they are offered and he was disinterested when they were made.

2. Evidence of general reputation as to the location of a boundary is competent if the declaration has its origin at a time comparatively remote and *ante litem motam,* and attaches itself to some monument of boundary or natural object or is supported by evidence of occupation and acquiescence tending to give the land in question some definite location.

ACTION by Benjamin C. Hemphill and wife against T. C. Hemphill and others, heard before *Judge M. H. Justice* and a jury, at the September Term, 1904, of the Superior Court of BUNCOMBE County.

This is an action of ejectment. The question at issue is the location of the line dividing the lands of the plaintiffs and defendants. Both of these tracts originally constituted one tract owned by Andrew Hemphill. About 1850 a parol division of this land was made between B. C. Hemphill, one of the plaintiffs, and John R. Hemphill, both sons of Andrew Hemphill. The plaintiffs claim that the line in question, located when the land was divided, runs from the mouth of the branch emptying into Reem's Creek to the point of a ridge and thence in a southeasterly direction on the face of the mountain across minor ridges and gullies to the "Jump Corner." The defendants claim that the line runs from the mouth of the branch to the point of the ridge, and thence in a northeasterly direction up the ridge to the Vance line.

Between these two lines contended for is the triangular piece of land in controversy.

In 1860 John R. Hemphill executed a bond for title to a portion of the land to John Brigman. John Brigman died and John R. Hemphill, in accordance with the terms of the bond for title, executed a deed to the heirs of John Brigman. This land was sold by J. G. Chambers, administrator of John Brigman, to pay the intestate's debts, and James Hemphill became the purchaser. James Hemphill conveyed the land by deed to his children, Eliza, Jane, Brank and Bettie Shope, defendants.

Verdict and judgment for the plaintiffs, and the defendants appealed.

*Moore & Rollins* for the plaintiffs.
*Frank Carter, Locke Craig* and *H. C. Chedester* for the defendants.

HOKE, J., after stating the facts: The rights of the parties to this controversy were made to depend upon the correct location of the divisional line between Benjamin C. and John R. Hemphill, under whom the defendants claim; and the defendants contend that the true location of this line runs from the "mouth of the branch to the point of the ridge and thence in a northeasterly direction up the ridge to the Vance line". In order to establish this position, the defendants offered, first, the deed from John R. Hemphill, now dead, to the heirs of John Brigman, bearing date November 18, 1866, as a declaration of John R. Hemphill on the correct location of the line in dispute.

The defendants further proposed to prove by a witness, John G. Chambers, that he had known the land in controversy for 50 years; that he knew the general reputation in that community as to the true location of this divisional line, and that according to such reputation the same ran along the

top of this ridge, and was placed as the defendants claimed.

On objection by the plaintiffs, this testimony was held incompetent and the defendants excepted.

It is the law in this State that under certain restrictions both hearsay evidence and common reputation are admissible on questions of private boundary. *Sasser v. Herring,* 14 N. C., 340; *Shaffer v. Gaynor,* 117 N. C., 15; *Yow v Hamilton,* 136 N. C., 357.

The restrictions on hearsay evidence of this character—declarations of an individual as to the location of certain lines and corners—established by repeated decisions, are: That the declarations be made *ante litem motam;* that the declarant be dead when they are offered, and that he was disinterested when they were made. *Bethea v. Byrd,* 95 N. C., 309; *Caldwell v. Neely,* 81 N. C., 114.

The declarations of John R. Hemphill in this deed to the heirs of John Brigman, as to the location of his own line, are hearsay. They are incompetent for the reason that he was interested when the same were made, and the judge below ruled correctly in excluding them.

On the second point: The evidence offered from the witness, John G. Chambers, on the general reputation as to the location of the divisional line: Such evidence has been uniformly received in this State, and the restriction put upon it by our decisions seems to be that the reputation, whether by parol or otherwise, should have its origin at a time comparatively remote, and always *ante litem motam.* Second, that it should attach itself to some monument of boundary, or natural object, or be fortified and supported by evidence of occupation and acquiescence tending to give the land in question some fixed or definite location. *Tate v. Southard,* 8 N. C., 45; *Mendenhall v. Cassells,* 20 N. C., 43; *Dobson v. Finley,* 53 N. C., 496; *Shaffer v. Gaynor,* 117 N. C., 15; *Westfelt v. Adams,* 131 N. C., 379-384. The proposed evidence comes fully up to the requirement of these decisions. The

reputation is attached to a place reasonably definite and the witness stated that he had known the land for fifty years; knew the general reputation in the community as to the line in dispute and where such line was placed by that reputation. We think it appears by fair intendment that the reputation offered had its origin *ante litem motam* and at a time sufficiently remote.

There was error in rejecting the proposed evidence which entitles the defendant to a

New Trial.