JOE HENRY WHITE AND WIFE, MARGARETTE E. WHITE, v. C. F. PRICE AND WIFE, MARIE E. PRICE.

(Filed 18 March, 1953.)

**1. Appeal and Error § 38—**

The burden is upon appellant not only to show error but also that the alleged error was prejudicial.

**2. Reference § 3—**

Doubt as to whether a processioning proceeding involved a complicated question of boundary or required a personal view of the premises within the purview of G.S. 1-189 (3), will be resolved in favor of the validity of the order for compulsory reference.

**3. Reference § 14a—**

Exceptions to the referee's report *held* sufficient in form to entitle plaintiffs to trial by jury on the issue tendered.

**4. Trial § 4—**

The continuance of a cause rests in the discretion of the court.

**5. Boundaries § 5d—**

Where it appears that declarant's statement was made subsequent to the time he divested himself of title to the land in question and before controversy arose, testimony of such declaration is competent.

**6. Appeal and Error § 39e—**

Exception to the admission of evidence will not be sustained when it appears that evidence of similar nature was admitted at the trial without objection.

**7. Trial § 39—**

A verdict of the jury may be interpreted and given significance by reference to the pleadings, evidence and charge of the court.

APPEAL by defendants from *Frizelle, J.,* August Term, 1952, of BERTIE. No error.

This was a processioning proceeding to determine the boundary line between the lands of the plaintiffs and defendants. G.S. 38-3.

The title of the plaintiffs and defendants to their adjoining lands respectively was admitted, and the only question presented was the exact location of the dividing line between them. There was no dispute as to the general location of the line, which extended in a northeast direction from a holly stump, now maple and postoak, indicated on the court map by the letter G, an admitted corner, in a practically straight line, 3,340 feet to the Republican-Aulander road. But the matter at issue was whether a portion of this line, the middle portion, ran along the center of a ditch, or along the center of a path or cartway on the southeast side of the ditch. Only a narrow strip 4 to 7 feet wide on the southeast bank of the ditch for a distance of about 1,500 feet, from the point marked E on the map to the point marked B, was involved. There was no dispute as to the line from the maple-postoak corner G, along the ditch to the point E, 1,330 feet, nor at the other end of the line as to distance from B, where the ditch ended, 500 feet, to the road.

The plaintiffs claimed the center of the path as the line from E to B, and the defendants claimed the center of the ditch as the dividing line between these points.

The plaintiffs in their complaint set out the sources of title to their land, together with all the boundary lines, and described the dividing line in dispute claimed by them as follows: Beginning "at a holly stump in a branch, going thence N. 47 deg. E. along a line which is along a ditch a part of the way and along the center of a path for the balance of the way (said path lying between the said J. E. Odom Davidson farm and the Arthur Bazemore land) a total distance from the holly stump of 3,340 feet to the aforesaid Republican-Aulander road."

The defendants in their answer admitted plaintiffs' title to the land adjoining their own and alleged that the correct boundary line between their lands was "a ditch extending from a holly stump on the back side of the lands of petitioners and defendants and running along said ditch and the center thereof to the center of a path at the end of said ditch and

thẹn along the center of said path to the public road leading from Repub-
lican to Aulander."

On these pleadings and the evidence offered the Clerk rendered judg-
ment in favor of defendants and the plaintiffs appealed to the Superior
Court.   In the Superior Court a compulsory reference was ordered to
which plaintiffs and defendants excepted, reserving right to jury trial.

The referee found in accordance with the contentions of the defendants
that the line ran from the maple and postoak at the point indicated on
the map by the letter G, thence along the ditch to the point marked E,
thence along the ditch to the point marked B, thence a straight line to a
point on the road marked A.

The referee's report was filed 3 May, 1952.   The case was set for trial
in the Superior Court at the May Term which convened 12 May, and to
be heard 13 May.   On that day plaintiffs filed exceptions to the referee's
report.   When the case was called that day plaintiffs moved to amend
their exceptions.   This was denied.   The plaintiffs then moved the court
to be permitted to withdraw their exceptions, as the report had been filed
less than 10 days prior to the convening of the court, and that the case
be continued.   This motion was allowed and defendants excepted.   There-
after the plaintiffs filed exceptions to the referee's report and the case was
heard at the August Term.   The defendants then moved to strike out the
plaintiffs' exceptions, and to strike plaintiffs' demand for jury trial.
These motions were denied and the defendants excepted.

During the trial the court with consent of counsel marked on the map
the figure 2 to indicate the point on the Republican-Aulander road where
the straight line from G, as claimed by the plaintiffs, would reach the
road.   The point on the map at which the line claimed by defendants and
as found by the referee would reach the road was indicated on the map by
the letter A.

The plaintiffs offered evidence tending to show the true location of the
dividing line was along the center of the path; that the general reputation
in the community supported this view; that the drainage of plaintiffs'
land was into the ditch, while the drainage on defendants' land was in
the opposite direction; that formerly a fence on each side enclosed the
path and ditch; that the path extended all the way from the road along
the ditch to the woods near point E; that the fences have long since been
removed, but the path or lane was still in use by hunters and others in
going to and from the woods.   The defendants' evidence, on the other
hand, tended to show that the true location of the dividing line was along
the center line of the ditch all the way from G to B, where the ditch
ended, and thence to A on the road; that the general reputation in the
community as to the location of the line supported their contention that
the ditch was the line, and that there had been marks along the ditch,

formerly a marked pine and a cherry tree, indicating the ditch as the line. This was controverted by plaintiffs.

The court, after stating the evidence and the contentions of the parties, charged the jury as follows:

"If the plaintiffs have satisfied you upon the evidence, and by its greater weight, that their allegations are true and correct, then, gentlemen, you should answer that issue in favor of the plaintiffs in this case, by writing as your answer, 'Beginning at the letter G, running thence in a north-easterly course a straight line to the figure 2 on the Republican-Aulander road.'

"If the plaintiffs have failed to so satisfy you, then, gentlemen, you should answer that issue in favor of the defendants' contention, to wit: 'Beginning at the letter G, running thence with the center of the ditch in a northeasterly direction to the letter D, thence center line of ditch extending to the letter A on the Republican-Aulander road.' "

The following issue was submitted to the jury: "Where is the true location of the dividing line between the lands of the plaintiffs and the lands of the defendants?" To this the jury answered "G to 2, a straight line."

From judgment on the verdict in favor of plaintiffs, the defendants excepted and appealed.

*E. R. Tyler and John R. Jenkins, Jr., for plaintiffs, appellees.*

*Jones, Jones & Jones and Pritchett & Cooke for defendants, appellants.*

DEVIN, C. J. In their appeal the defendants have brought forward numerous exceptions to rulings of the court noted during the course of the proceeding, from the initial order of reference to the signing of the judgment, but after an examination of the entire record we are left with the impression that no harm has resulted to the defendants from any of these rulings which would warrant us in setting aside the verdict and judgment rendered.

The controversy falls within a narrow compass. A single question was raised by the pleadings and that was whether the disputed portion of the dividing line between the lands of the plaintiffs and defendants, for a distance of some 1,500 feet, should be located along the center of a ditch, or along the center of a path or cartway on the southeast side of the ditch. The plaintiffs claimed the path; the defendants the ditch. The width of the strip involved was 4 to 7 feet. The court's final instruction to the jury epitomized the issue. He charged the jury if they found from the evidence and by its greater weight the location of the line to be in accordance with plaintiffs' contention they should answer the issue that the true dividing line was the line from the corner marked G, a straight line

to the figure 2 on the road. And if not so satisfied, they should answer that the true dividing line was the line from G with the center of the ditch to the point on the road marked A.

We deem it unnecessary to set out in detail the testimony offered in the trial. It is sufficient to say that there was evidence in the record tending to support the contentions of both parties. The jury has considered all the evidence relating to the controverted issue, and has resolved the question in favor of the plaintiffs. The decision thus reached must stand unless there be found such substantial error in the rulings of the trial judge as would appear to have affected the determination of this issue adversely to the defendants. The burden is on the appellants not only to show error but that the result was materially affected thereby to their hurt. *Garland v. Penegar,* 235 N.C. 517, 70 S.E. 2d 486; *Hodges v. Malone,* 235 N.C. 515, 70 S.E. 2d 478.

The order of compulsory reference of the case was based on the ground that it involved a complicated question of boundary or required a personal view of the premises, G.S. 1-189 (3). The defendants excepted to the order, and now assign error for the reason that the question of boundary raised by the pleadings was not sufficiently complicated to justify a reference. However, we resolve the doubt in favor of the validity of the order.

The exceptions to the referee's report are sufficient in form to entitle the plaintiffs to trial by jury on the issue tendered. *Cotton Mills v. Maslin,* 200 N.C. 328, 156 S.E. 484; *Brown v. Clement Co.,* 217 N.C. 47, 6 S.E. 2d 842; *Simmons v. Lee,* 230 N.C. 216, 53 S.E. 2d 79; *Murphy v. Smith,* 235 N.C. 455, 70 S.E. 2d 697.

The continuance of the case and the allowance of time to the plaintiffs to file exceptions to the referee's report were matters within the discretion of the court, and no prejudicial effect is perceived. *Kerr v. Hicks,* 131 N.C. 90 (94), 42 S.E. 532; *Coleman v. McCullough,* 190 N.C. 590, 130 S.E. 508; *Todd v. Smathers,* 235 N.C. 123, 68 S.E. 2d 783; McIntosh, sec. 533.

The defendants noted exception to the testimony of the witness F. L. Odom as to the declaration of a deceased person, J. E. Odom, relative to the boundary line here in question. The defendants contend this evidence was incompetent, and that the court erred in admitting it. Under the rule stated in *Yow v. Hamilton,* 136 N.C. 357, 48 S.E. 824, and *Corbett v. Hawes,* 187 N.C. 653, 122 S.E. 478, in order to render hearsay evidence or declarations as to boundary competent it must appear that the declarant is now dead, that he was at the time of the declaration disinterested, and that the declaration was made *ante litem motam.* It appears from the record here that J. E. Odom was divested of title to the land in 1938; that he is now dead, and that this proceeding was instituted

in 1950. There was no evidence of prior controversy. Plaintiffs contend it is reasonably to be inferred from the witness' testimony that the declaration was made at a time when witness and not the declarant was owner of the land, and hence that the declarant at that time was disinterested, and further that declarant died before the controversy arose. Stansbury, sec. 151. It would seem that if the declaration was made after 1938, and before suit, it would be competent under the rule, and that in the absence of anything to the contrary the presumption on appeal in favor of the correctness of the trial judge's ruling would apply. However, it appears that evidence of similar nature was admitted without objection. Defendants' assignment of error on this ground is not sustained.

Evidence was also admitted tending to show the general reputation, on the one hand, that the path was the line, and on the other that the ditch was so regarded, and that both the path and the ditch had been there from a remote period, one witness thought as much as one hundred years. *Owens v. Lumber Co.*, 212 N.C. 133, 193 S.E. 219; *Hemphill v. Hemphill*, 138 N.C. 504, 51 S.E. 42; Stansbury, sec. 150. The competence of this evidence was not challenged.

There was no exception to the sufficiency of the verdict. However, the rule is that the verdict may be interpreted and given significance by reference to the pleadings, evidence and charge of the court. *Jernigan v. Jernigan*, 226 N.C. 204, 37 S.E. 2d 493.

We have examined defendants' exceptions to the judge's charge to the jury, as well as each of the other exceptions noted, and find nothing therein which should be held prejudicial to the defendants' rights.

We conclude that the verdict and judgment should be upheld.

No error.